# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| J.B. CUSTOM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10-CV-326 |
| | ) | |
| AMADEO ROSSI, S.A., FORJAS TAURUS, S.A., TAURUS INTERNATIONAL MANUFACTURING, INC., and BRAZTECH INTERNATIONAL, L.C., | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This is a trademark infringement case brought by J.B. Custom, Inc., an Indiana gun manufacturer. Two of the defendants, Taurus International Manufacturing, Inc. ("TIMI") and Braztech International L.C., have filed nearly identical Motions to Dismiss [DE 30 and 33], both arguing that the Northern District of Indiana is an improper venue. They also contend that J.B.'s Complaint lacks sufficient specificity to meet its pleading burden. I agree with the Defendants that, at least as currently plead, J.B.'s Complaint does not establish that the Northern District of Indiana is a proper venue for this case. So Defendants' Motions to Dismiss will be granted, but J.B. will be given a chance to amend its Complaint to cure the deficiencies raised in this Order.

## FACTUAL BACKGROUND

This case grows out of a dispute over the production and sale of a custom lever-action gun known as the Mare's Leg, which is designed and sold by Plaintiff J.B. Custom. J.B is an Indiana corporation with its principal place of business in Huntertown, Indiana. J.B. designs, manufactures, and sells various firearms, including the Mare's Leg. [DE 1 at 1, 3.] J.B. has

1

obtained a service-mark registration from the U.S. Patent and Trademark Office for the use of the term "Mare's Leg" in conjunction with the "custom manufacturing of firearms and accessories for firearms." [*Id.* at 14-15.] J.B. also alleges that, separate from its *service-mark* rights, it also has both common-law *trademark* rights for the use of the term "Mare's Leg" in conjunction with the sale of that gun and common-law *trade-dress* rights for the shape and design of the Mare's Leg. [*Id.* at 4.]

In 2006, J.B. entered into an "Exclusivity Agreement" with a Brazilian Company, Amadeo Rossi S.A. [*Id.* at 13.] Under the contract, which surprisingly is only three sentences in all, Amadeo Rossi agreed to "produce and sell firearms developed and conceived by J.B. Custom, Inc. such as Mares Leg Lever Action Pistol with exclusivity in USA to J.B. Custom, Inc." [*Id.*] In 2008, another Brazilian Company, Forjas Taurus, S.A., purchased Amadeo Rossi and assumed its obligations under the Exclusivity Agreement. [*Id.* at 4.]

Trouble began when Amadeo Rossi placed an ad in the July 2010 issue of *American Rifleman* that advertised a lever-action firearm named the "Rossi Ranch Hand." [*Id.* at 4.] The advertisement referred to the Rossi Ranch Hand as a "Mare's Leg." [*Id.*] J.B. believes this ad's use of the term Mare's Leg was a violation of its intellectual property rights and that the sale of any such guns is a breach of the Exclusivity Agreement. J.B. further alleges that Amadeo Rossi has also used the term "Mare's Leg" in other advertising, including on its website. [*Id.* at 5.] J.B. also alleges that "Defendants are importing Infringing Firearms through Defendant Braztech or through importers other than the Plaintiff." [*Id.* at 5.]

J.B.'s Complaint brings six counts collectively against Amadeo Rossi, Forjas Taurus, TIMI, and Braztech. The first count – Breach of Contract – alleges that "Defendants have

breached the Exclusivity Agreement." [*Id.*] While this count is brought against the "Defendants" – meaning all of them – it is difficult to understand how TIMI or Braztech could be in breach of a contract to which they are not signatories and for which they are not alleged to have assumed any obligations. This is the problem when all defendants are lumped together in complaints. The other five counts – Trademark Infringement, False Designation of Origin, Passing Off, False Advertising, and Unfair Competition – are the typical grab-bag of counts usually found when trademarks or services marks are at issue. Ultimately, it seems that these are the counts J.B. intends to apply to TIMI and Braztech, as J.B. accuses both entities of having "made, advertised, imported, or sold firearms using trade names, shapes, designs, or appearances identical or similar to trade names, shapes, designs, or appearances the rights to which are owned by J.B. Custom, including in the State of Indiana." [*Id.* at 1-2.]

## DISCUSSION

J.B. is relatively clear how it believes the Brazilian companies, Amadeo Rossi and Forjas Taurus, fit into the allegations in its Complaint. It is far less clear, however, how TIMI and Braztech fit in, though J.B. seems to believe that Braztech (and perhaps TIMI as well) are infringing its intellectual property rights by importing the "Infringing Firearms." This lack of clarity may give some merit to TIMI and Braztech's argument that the Complaint as currently pled fails to meet the standards required by Rule 12(b)(6). But it would be premature to address that issue because J.B. has failed to establish that the Northern District of Indiana is a proper venue for this case, which is the threshold issue that I will take up for now.

A.      **Venue Under Section 1391(b)**

If the two Brazilian companies were the only defendants in this matter, the venue issue would be an easy one: venue would be appropriate in this district because, under 28 U.S.C. § 1391(d), "[a]n alien may be sued in any district." But when "aliens and non-aliens are joined as defendants, venue for the entire action is proper in any district where it is correct as to [the] non-alien defendant." *Flag Co. v. Maynard*, 376 F. Supp. 2d 849, 857 (N.D. Ill. 2005). *See also A.D.M. Club Mgmt. Sys., Inc. v. Gary Jonas Computing, Ltd.*, No. Civ.A.05-3943, 2006 WL 2689400, at *8 (D.N.J. Sept. 19, 2006) (same). So I can ignore the two Brazilian companies for present purposes and instead focus on whether venue is appropriate in this district as to the non-alien defendants, TIMI and Braztech.

Because jurisdiction in this case is not founded solely on diversity of citizenship, 28 U.S.C. § 1391(b) governs the venue (or venues) where J.B. can properly file suit. Section 1391(b) provides that this action may only be brought in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no other district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

Under Section 1391(b)(1), the first path to finding a proper venue depends on the residences of TIMI and Braztech.[1] For purposes of venue, "a defendant that is a corporation

---

[1] One might argue that the analysis under Section 1391(b)(1) should depend on the residences of the two Brazilian Defendants as well, since it requires that *all defendants* reside in the same state. However, as noted, when alien and non-alien defendants are joined, the alien defendants are ignored in conducting the venue analysis. *See*, *e.g.*, *Moellers N. Am., Inc. v. MSK*

4

shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Determining TIMI and Braztech's state (or states) of residence thus requires a determination as to the state (or states) to which either was subject to personal jurisdiction at the time J.B. filed its Complaint.

A federal court has personal jurisdiction over non-consenting, nonresident defendants to the extent authorized by the law of the state in which that court sits. *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 664 (7th Cir. 1986). This rule applies in diversity and federal question cases, unless the federal statute at issue permits nationwide service or the defendant is not subject to personal jurisdiction in any state in the United States. Fed. R. Civ. P. 4(k); *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1201-02 (7th Cir. 1997). Neither of the exceptions apply to this case: the Lanham Act does not authorize nationwide service of process (*see* 15 U.S.C. § 1121(a)), and as Florida corporations, both TIMI and Braztech are subject to personal jurisdiction in Florida.

The question is thus whether an Indiana state court would have jurisdiction over TIMI and Braztech. Ordinarily, whether a state court has jurisdiction over a party requires a two-step analysis: the Court must first determine whether the state's long arm statute would confer jurisdiction over the party and then whether the exercise of that jurisdiction satisfies due process. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 779 (7th Cir. 2003). However, in 2003, the Indiana long arm statute was amended to "extend[] to the limits of the Constitution." *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006) (quotation marks

---

*Covertech, Inc.*, 870 F. Supp. 187, 193 (W.D. Mich. 1994) (where defendants were two foreign corporations and a Michigan resident, venue was proper in Michigan under Section 1391(b)(1)).

omitted). In particular, Indiana Trial Rule 4.4(A) specifically states that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Ind. T.R. 4.4(A). Therefore, my focus is solely on the due process analysis.

To exercise jurisdiction over TIMI and Braztech, due process requires minimum contacts with the State of Indiana and that those contacts, in light of other relevant factors, demonstrate that "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). *See also Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 942-43 (7th Cir. 2000). A court examines whether the defendant's contacts with the state are such that it should reasonably anticipate being haled into court there. *Burger King*, 471 U.S. at 474; *Cent. States*, 230 F.3d at 943. The defendant must have purposefully availed itself of the privilege of conducting activities in the forum state, invoking the benefits and protections of its laws. *Burger King*, 471 U.S. at 474-75; *Cent. States*, 230 F.3d at 943.

To meet the "minimum contacts" threshold, there are two types of contacts that may be sufficient to establish jurisdiction: (1) the defendant's contacts with the forum state that are unrelated to the basis of the lawsuit – known as general jurisdiction; and (2) the defendant's contacts that are related to the subject matter of the lawsuit – specific jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 & nn. 8-9 (1984).

In this case, J.B.'s Complaint does not establish that either TIMI or Braztech have sufficient minimum contacts with Indiana to meet the threshold of either general or specific jurisdiction – and thus J.B. cannot establish that venue is proper under 1391(b)(1). To

understand this point, first consider how the analysis would have unfolded under 1391(b)(1) if this case had been filed in the Southern District of Florida. Using the minimum-contacts framework, we know that both TIMI and Braztech are subject to personal jurisdiction in Florida because they are both Florida corporations based in Miami. Thus, since personal jurisdiction exists in Florida (and in particular the Southern District of Florida), for purposes of venue TIMI and Braztech are both considered *residents* of Florida (and in particular residents of the Southern District of Florida). Venue would thus be proper under 1391(b)(1) because TIMI and Braztech "reside in the same State" and venue is appropriate in a "judicial district where any defendant resides."

This analysis unfolds quite differently with respect to Indiana, however. To begin with, J.B.'s Complaint does not allege sufficient minimum contacts to establish personal jurisdiction over either TIMI or Braztech in Indiana. J.B. asserts that both TIMI and Braztech "made, advertised, imported, or sold firearms using trade names, shapes, designs, or appearances identical or similar to trade names, shapes, designs, or appearances the rights to which are owned by J.B. Custom, including in the State of Indiana." [DE 1 at 1-2.] But this allegation – with its reliance on "or" – is too broad to establish personal jurisdiction under the minimum contacts analysis. For instance, under the language of this allegation, it may be that Braztech and TIMI only engaged in advertising in Indiana through a "passive" website, one "which merely makes available information about the company and its products." *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549-50 (7th Cir. 2004). If that's the case, personal jurisdiction would not exist. *Id*. J.B.'s allegations are simply too broad to know whether either TIMI or Braztech have sufficient minimum contacts with Indiana.

Moreover, even if these allegations were sufficient to establish that TIMI and Braztech are subject to personal jurisdiction in Indiana generally, they would still be insufficient to provide a basis for venue under 1391(b)(1) because there is no allegations that TIMI and Braztech are subject to personal jurisdiction in the *Northern District* of Indiana specifically. That is, under 1391(b)(1), venue is appropriate only in a "judicial district where any defendant resides," and Plaintiff's Complaint lacks any allegation that would establish that TIMI or Braztech has sufficient minimum contacts with the Northern District of Indiana such that either would be considered to "reside" in the Northern District of Indiana. Thus, J.B.'s Complaint does not establish that the Northern District of Indiana is an appropriate venue for this action under Section 1391(b)(1).[2]

The venue analysis under Sections 1391(b)(2) and (3) is more straightforward. Section 1391(b)(2) provides that venue is proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." Determining whether a "substantial part" of the events or omissions that gave rise to the claim occurred in this district "is more of a qualitative, rather than quantitative inquiry." *Moore v. Dixon*, 460 F. Supp. 2d 931, 936 (E.D. Wis. 2006) (citing *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432-33 (2d Cir. 2005)). A court must "assess[] the

---

[2] J.B. also argues that by failing to challenge jurisdiction in their Motions, TIMI and Braztech have subjected themselves to personal jurisdiction in the Northern District of Indiana and would thus now be considered residents of the Northern District of Indiana for purposes of venue. While creative, this argument is ultimately misguided because under Section 1391(c) the personal-jurisdiction analysis of a corporate defendant occurs "at the time the action is commenced." This action commenced with the filing of the Complaint, and at that time TIMI and Braztech had obviously not yet filed any motion that could waive, under Rule 12(h)(1), their right to challenge personal jurisdiction.

8

overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum." *Id*.

There is no indication in the Complaint that a "substantial part" of the events giving rise to J.B.'s claims occurred in this district. J.B. argues that it "has shown that a substantial part of the events giving rise to this suit occurred in this District" for two reasons: 1) it alleged that TIMI and Braztech engaged in "breach of contract, trademark infringement, unfair competition and various violations in this district" and 2) J.B. is located in this district and was "injured by these acts in this district." [DE 39 at 3.] The first point is simply incorrect: while J.B. has generally alleged that TIMI and Braztech engaged in various conduct in Indiana, there is no allegation anywhere in the Complaint that TIMI and Braztech engaged in these alleged violations in the *Northern District* of Indiana. The second point suffers from faulty logic: venue would be rendered meaningless if a plaintiff could always bring suit in its home district simply because it had suffered damages.

The final path to a proper venue – "a judicial district in which any defendant may be found" – only applies when the first two subsections are unable to produce at least one viable venue. *Moore*, 460 F. Supp. 2d at 935. Section 1391(b)(3) is therefore inapplicable because, at the very least, the Southern District of Florida is a proper venue under Section 1391(b)(1).

To sum up: as the Complaint is currently drafted, J.B. has not met its burden of establishing that the Northern District of Indiana is a proper venue as to either TIMI or Braztech. But, as discussed more thoroughly below, J.B. will be given an opportunity to file an amended complaint to address the shortcomings described above.

9

**B.     Dismissal or Transfer under Section 1406**

Since venue has not yet been shown to be proper here, the case against TIMI and Braztech can either be dismissed or transferred to a proper venue.  28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); s*ee also Hapaniewski v. City of Chi. Heights*, 883 F.2d 576, 579 (7th Cir. 1989).

There is a case to be made that transfer to the Southern District of Florida would be "in the interest of justice" here.  There is no question that the Southern District of Florida would be an appropriate venue for TIMI and Braztech and, because it would also be an appropriate venue for the two Brazilian defendants, the entire case could be transferred there, thus obviating any possibility of two separate-but-interrelated suits proceeding simultaneously in different districts.  Indeed, courts often favor transfer over dismissal.  14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3827 (3d ed.) ("It is not surprising that in most cases of improper venue the courts conclude that it is in the interest of justice to transfer to a proper forum rather than to dismiss the litigation.")

In this case, however, the interest of justice favors dismissing the Complaint as to TIMI and Braztech, without prejudice, and providing J.B. leave to amend.  Other courts have taken this tack.  *See*, *e.g.*, *Nagel v. ADM Investor Servs., Inc.*, 995 F. Supp. 837, 843 (N.D. Ill. 1998) (Defendant's "motion to dismiss for lack of venue is granted, with leave for the plaintiffs to replead within 28 days of the date of the entry of this order."); *Brewer v. Aaron*, 70 F.R.D. 460, 462 (S.D.N.Y., 1976).  In this case, there appears to be no statute of limitations issue – a factor

that often determines why transfer is favored over dismissal – and so dismissal with leave to amend will not materially prejudice J.B. Amendment is also in the interests of efficiency because, while addressing the issue of venue, J.B. can simultaneously address the sufficiency of its allegations to withstand a 12(b)(6) challenge, should it believe that TIMI and Braztech's arguments on that front have any merit.

Of course, if upon reflection Plaintiff concludes that the Northern District of Indiana is not a proper venue as to TIMI or Braztech, then any amended complaint that continues to name either TIMI or Braztech as a Defendant should be accompanied by a motion to transfer the case to a proper venue (presumably the Southern District of Florida).

## CONCLUSION

Accordingly, the Motions to Dismiss by Taurus International Manufacturing, Inc. [DE 30] and Braztech International L.C. [DE 33] are **GRANTED**. Plaintiff's claims against Taurus International Manufacturing, Inc. and Braztech International L.C. are **DISMISSED WITHOUT PREJUDICE**. The Motions for Hearings by Taurus International Manufacturing, Inc. [DE 32] and Braztech International L.C. [DE 35] are **DENIED AS MOOT**. Plaintiff is granted 30 days, up to and including February 14, 2011, to amend its Complaint.

**SO ORDERED**.

ENTERED: January 13, 2011

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT