UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| J.B. CUSTOM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10-cv-326 |
| | ) | |
| AMADEO ROSSI, S.A., FORJAS TAURUS, | ) | |
| S.A., TAURUS INTERNATIONAL | ) | |
| MANUFACTURING, INC., and BRAZTECH | ) | |
| INTERNATIONAL, L.C., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This is a trademark infringement and breach of contract case brought by J.B. Custom, Inc., an Indiana gun manufacturer. Two of the defendants, Amadeo Rossi and Forjas Taurus, are Brazilian corporations and have filed essentially identical Motions to Dismiss [DE 15 and 19] on the grounds that they were not properly served with the Complaint, motions which they have subsequently renewed to apply to J.B.'s first amended complaint [DE 62 and 65] as well as its second amended complaint [DE 75 and 77]. These motions raise complicated issues of international law, but essentially they come down to single question: Does sending a complaint via certified mail to a Brazilian company's corporate address constitute effective service under Federal Rule of Civil Procedure 4(f)? For the reasons articulated below, the answer is "no." If J.B. wants Amadeo Rossi and Forjas Taurus in the case, it must seek letters rogatory to do it.

**FACTUAL BACKGROUND**

Much of the factual background underlying this case was sketched out in my previous Order of January 13, 2011 [DE 49]. Suffice it to say that this case grows out of a dispute over

1

the production and sale of a custom lever-action gun known as the Mare's Leg, which is designed and sold by J.B.  J.B. alleges it owns various intellectual property rights connected to the term "Mare's Leg" and that Defendants are infringing on these rights.  J.B. also alleges that Amadeo Rossi and Forjas Taurus are in breach of an "Exclusivity Agreement" that J.B. entered into with Amadeo Rossi and that Forjas Taurus allegedly assumed when it purchased Amadeo Rossi.

As noted, J.B. attempted to serve its Complaint on Amadeo Rossi and Forjas Taurus by sending it via certified mail to their corporate headquarters in Brazil.

## DISCUSSION

Rule 4(h) governs the service of corporations, and subsection (2) provides that foreign corporations may be served in a foreign country in the same way in which foreign individuals may be served under Rule 4(f) (except for personal delivery under Rule 4(f)(2)(C)(i)).  *See* Fed. R. Civ. P. 4(h) (a "foreign corporation . . . must be served . . .  at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual").

Rule 4(f) provides that an individual in a foreign country can be served in one of the following ways:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>>
>> (B) as the foreign authority directs in response to a letter rogatory or letter

>of request; or
>
>(C) unless prohibited by the foreign country's law, by:
>
>>(i) delivering a copy of the summons and of the complaint to the individual personally; or
>>
>>(ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
>(3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

The relevant question is whether sending the complaint via certified mail complies with any of these methods. We can eliminate many of them quickly. First, the method described in Rule 4(f)(3) – by order of this Court – was not utilized. The method described in Rule 4(f)(1) – "internationally agreed means of service" – is also out because the only internationally agreed means of service between the United States and Brazil is the Inter-American Convention on Letters Rogatory (*see* 28 U.S.C. § 1781), which provides for service via letters rogatory.

Various methods of service are prescribed in Rule 4(f)(2), but must of those can be quickly tossed aside here as well.[1] For instance, the method listed in Rule 4(f)(2)(B) – "as the foreign authority directs in response to a letter rogatory or letter of request" – is inapplicable since letters rogatory were not used here. Rule 4(f)(2)(C)(i) also does not apply because, as already noted, personal service is not an available method when the foreign defendant is a

---

[1] The threshold requirement of Rule 4(f)(2) – that "the international agreement allows but does not specify other means" of service – is met here because Article 15 of the Inter-American Convention states that it "shall not . . . preclude the continuation of more favorable practices in this regard that may be followed by these States." Inter-American Convention on Letters Rogatory art. 15, Jan. 30, 1975, 14 I.L.M. 339 (entered into force Jan. 16, 1976) reprinted following 28 U.S.C. § 1781. Thus, the Inter-American Convention "allows but does not specify" other forms of service.

corporation (and, of course, personal service was not attempted here in any event). *See* Fed. R. Civ. P. 4(h)(2).

The parties have spent a lot of time in their briefing debating whether the method stated in Rule 4(f)(2)(C)(ii) – "using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt" – applies to certified mail. But in the end this issue is a complete nonstarter because, by directly sending the complaint to Amadeo Rossi and Forjas Taurus, the Complaint was not addressed or sent by "the clerk," and thus Rule 4(f)(2)(C)(ii) does not apply. *See Intelsat Corp. v. Multivision TV LLC*, 736 F. Supp. 2d 1334, 1342 (S.D. Fla. 2010) (finding service improper under Rule 4(f)(2)(C)(ii) when plaintiffs "sent the documents directly without having the clerk address and send them as the Rule specifies").

That leaves us with just the methods of service prescribed in Rule 4(f)(2)(A), which raises the following question: Does sending a complaint via certified mail satisfy Brazil's "law for service in [Brazil] in an action in its courts of general jurisdiction?"

## I. Analyzing Rule 4(f)(2)(A)

There are at least two ways to read the directive in Rule 4(f)(2)(A) that service may be effectuated "as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction." The ambiguity comes in the phrase "law of service," which could mean in this case either 1) Brazil's general "law of service" that applies when any of its citizens files a lawsuit in one of its courts, or 2) Brazil's specific "law of service" as to how one of the foreign country's citizens may be served in an action initiated in the courts of another country.

The Third Circuit summarized this ambiguity well in a case where a U.S. plaintiff was

trying to effectuate service on a Spanish defendant:

> Rule 4(i)(1)(A) [the predecessor to 4(f)(2)(A)] does not tell us whether it is the Spanish law governing service of process issued by non-Spanish courts in cases initiated in a non-Spanish jurisdiction or the Spanish law on service of process issued by Spanish courts for service on persons found in Spain that applies. The first issue we must consider, therefore, is whether [plaintiff] must serve the Spanish defendants in accordance with general Spanish procedural law (i.e., how one resident party might serve another), or, more specifically, follow the procedure Spain requires foreign plaintiffs to follow when they desire to serve process originating outside Spain on parties found in Spain.

*Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 487 (3d Cir. 1993). Similarly, in this case I must consider whether Rule 4(f)(2)(A) requires that J.B. serve Amadeo Rossi and Forjas Taurus in accordance with general Brazilian procedural law (i.e., how one Brazilian might serve another Brazilian in a Brazilian court), or, more specifically, follow the procedure Brazil requires foreign plaintiffs to follow in order to serve process in cases originating outside Brazil on parties found in Brazil. This interpretive distinction can make all the difference in the world.

So the first thing to determine is which of these two readings of Rule 4(f)(2)(A) is more sensible. In *Grand Entertainment*, the Third Circuit concluded the second reading was preferable. The court held that, if a foreign county "has enacted special provisions governing service of process issued out of the courts of other nations on behalf of foreign plaintiffs against persons found in the receiving jurisdiction," then "it would be an affront to national sovereignty" to ignore those provisions in favor of applying the foreign country's general procedures for service of its residents in cases initiated in its courts. *Grand Entertainment*, 988 F.2d at 487. Indeed, any foreign jurisdiction "could rationally decide to impose special burdens on foreign process because service of process issued by a foreign court may require residents of the

receiving state to defend themselves in distant and inconvenient places against laws that impose duties that nationals or residents of the receiving state have not foreseen or are unaccustomed to taking into account." *Id* at 488. The imposition of such requirement is justified because when a "summons calls on [a defendant] to answer charges half a world away in a court he has never heard of, the party served may be less likely to bestir himself, not recognizing that a failure to do so may have serious adverse consequences." *Id.* The court concluded: "Accordingly, we think that Rule 4(i) required [plaintiff] to observe the provisions of Spanish law governing the service on Spanish nationals of process issued out of non-Spanish courts at the request of foreign plaintiffs." *Id.*

I agree with *Grand Entertainment,* and thus I read Rule 4(f)(2)(a) to require J.B. to observe any provisions of Brazilian law – if there are such provisions – that govern the service on Brazilian nationals of process issued by non-Brazilian courts at the request of foreign plaintiffs. *See also Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries*, 353 F.3d 916, 925 (11th Cir. 2003) (analyzing attempts to effectuate service under Rule 4(f)(2)(A) in Austria). [2]

This brings me to a difficult question: Does Brazilian law specify what a foreign plaintiff must do in order to validly serve Brazilian corporations when it has commenced an action in a foreign court? This is a difficult question because there are a limited number of

---

[2] Of course, if Brazilian law had no specific provision for how to serve process issued by foreign courts at the request of foreign plaintiffs, then the general law of service in Brazil would apply. *See*, *e.g.*, *Retractable Technologies, Inc. v. Occupational & Medical Innovations, Ltd.*, 253 F.R.D. 404, 406 (E.D. Tex. 2008) ("Therefore, a foreign court's general service law, as applicable to its residents and citizens, will control for the purposes of Rule 4(f)(2)(A) as long as there is not some other, more specific, provision that mandates service by another method.").

English-language guides to Brazilian procedural law.  As a result, I have to rely to some extent on the expert declarations provided by both sides, all the while taking into account the Seventh Circuit's recent admonition that district courts be wary of relying solely on the "testimony or affidavits of expert witnesses" in order "to establish the meaning of a law of a foreign country." *Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624, 631 (7th Cir. 2010) (Posner, J. concurring) ("I cannot fathom why in dealing with the meaning of laws of English-speaking countries that share our legal origins judges should prefer paid affidavits and testimony to published materials.  It is only a little less perverse for judges to rely on testimony to ascertain the law of a country whose official language is not English, at least if it's a major country and has a modern legal system.").

      Unsurprisingly, the experts seem to have different views on whether Brazilian law has a specific requirement as to how its citizens must be served in an action initiated in the courts of another country.   The expert for Amadeo Rossi and Forjas Taurus declares with certainty: "Brazilian law currently requires that service of process for proceedings in a foreign court on individuals or corporations with a know[n] address that are present and domiciled in Brazil be effectuated through a letter rogatory duly confirmed by the Superior Tribunal of Justice."  [DE 50-1 at 3.] J.B.'s expert takes the opposing view, though she is less definitive on the matter, adding an important qualifier at the start of the key paragraph of her declaration:  "As long as the service of process does not offend the national sovereignty, the public order or if it is not authentic, Brazilian law does not explicitly exclude or prohibit other means of foreign service, including the service of process by use of certified mail on a Brazilian corporation from a foreign court."  [DE 46-2 at 2.]

The qualifiers used by J.B's expert are vitally important, and on reflection they begin to render her declaration meaningless: the entire question at issue is whether service of process by certified mail offends Brazil's "national sovereignty." Indeed, the ostensibly competing declarations may very well be in accord with one another: J.B.'s expert declaration essentially just raises a question – Does service of a foreign complaint by certified mail offend Brazil's national sovereignty? – which Defendants' expert answers with an emphatic, "Yes, because Brazil requires letters rogatory."[3]

So, on my reading of the expert declarations, Brazil (and its national sovereignty) does require that a complaint from a foreign court be served via letters rogatory. This conclusion is further supported by the "Brazil" chapter in the book *International Civil Procedure,* which states: "When foreign courts seek service in Brazil, a rogatory letter is remitted by the foreign court to the Ministry of Foreign Affairs, which forwards the rogatory letter to the Brazilian Supreme Court." *International Civil Procedure* 100 (Shelby R. Grubbs ed., 2003). The chapter goes on to make a similar pronouncement in discussing the enforcement of foreign judgments in Brazil:

> Service of foreign process to a Brazilian-domiciled defendant whose address is known is deemed to be proper if effected on him personally or on his legally authorized representative. The service of notice shall be requested by the foreign court by means of letters rogatory and is subject to approval of the Supreme

---

[3]In addition to the competing experts declaration attached to J.B.'s Response and Forjas Taurus's Reply, Forjas Taurus also submitted an additional "supplemental" expert declaration to its Response [DE 59] to J.B.'s Sur-Reply [DE 52]. J.B. then filed a Motion to Strike [DE 60] the supplemental declaration because it "failed to limit itself to the addressing J.B.'s opposition argument." [DE 60 at 3.] This motion will be denied: J.B.'s sur-reply raised issues about the precedential value of court opinions in Brazil (a difficult issue, given its history as a civil code country), and the majority of the supplemental declaration was geared towards answering those questions.

>Court. Letters Rogatory must follow the *exequater* proceedings by which the Supreme Court authorizes the performance of the acts requested by the foreign court, such as service of process, taking of witness testimony, or production of documentary evidence. Therefore, notices served by publication, mail or by diplomatic representatives of a foreign country, even if authorized by the laws of such country, do not constitute a valid form of service for the purpose of confirming and enforcing a foreign judgment in Brazil.

*Id.* at 112.

This reading of Brazilian law is further confirmed by the State Department's website concerning service of process in Brazil. The website notes that, since Brazil is not a party to the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters, the way to obtain proper service on a Brazilian corporation is via letters rogatory. Brazil Judicial Assistance, http://travel.state.gov/law/judicial/judicial_672.html (last accessed June 6, 2011).

To top it off, a number of other courts addressing this issue have also concluded that Brazilian law requires that foreign legal pleadings be served upon corporate citizens of Brazil by means of letters rogatory. *See*, *e.g.*, *Lake Charles Cane LaCassine Mill, LLC v. SMAR Intern. Corp.*, 2007 WL 1695722, at *1-2 (W.D. La. June 8, 2007) (quashing an attempt to serve a Brazilian corporation by means of Federal Express and requiring the use of letters rogatory); *Tucker v. Interarms*, 186 F.R.D. 450, 452 (N.D. Ohio 1999) ("Rule 4(f)(2)(a) strongly suggests that Tucker must obtain service of process upon Rossi via letters rogatory."); *Alpha Omega Technology, Inc. v. PGM - Comercio E Participacoes Ltda.*, 1994 WL 37787, at *1 (S.D.N.Y. Feb. 9, 1994) (agreeing with expert affidavit of Deborah Renata Srour "that Brazilian law requires that service of process by a foreign party upon a party domiciled in Brazil must be made by means of letters rogatory."); *Commodity Futures Trading Com'n v. Nahas*, 738 F.2d 487, 494

(D.C. Cir. 1984) ("Brazilian law requires that service of process by foreign nations be made pursuant to a letter rogatory or a letter of request transmitted through diplomatic channels").

In sum, these expert declarations, secondary sources, and cases all lead me to conclude that, under Rule 4(f)(2)(A), Brazil's "law for service . . . in an action in its courts of general jurisdiction" requires that foreign complaints be served via letters rogatory and that, therefore, J.B.'s attempt to serve Amadeo Rossi and Forjas Taurus by certified mail was ineffective.[4]

## II.     Service Under Rule 4(f)(3)

J.B. argues, alternatively, that this Court should use its power under Rule (4)(f)(3) to order a method of service "by other means not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). J.B. points to a leading treatise to argue that "the use of a court-directed means for service of process under Rule 4(f)(3) is not a disfavored process and should not be considered extraordinary relief." 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1134 (3d ed.).

But as the Eleventh Circuit noted in *Prewitt*, the 1993 Advisory Committee Notes to Rule 4(f)(3) instruct: "Paragraph (3) authorizes the court to approve other methods of service not prohibited by international agreements. . . . Inasmuch as our Constitution requires that reasonable notice be given, *an earnest effort* should be made to devise a method of communication that is consistent with due process and *minimizes offense to foreign law*." *Prewitt*, 353 F.3d at 927 (emphasis added by Eleventh Circuit). In *Prewitt*, the court held that,

---

[4]Note also that this conclusion – that Brazil prohibits any method of foreign service other than letters rogatory – precludes J.B. from now attempting to get service of the complaint under Rule 4(f)(2)(C)(ii) (via mail addressed and sent by the clerk) because subsection (C) can only be invoked when the method is not "prohibited by the foreign country's law."

since Austrian law prescribed a specific method of serving the defendant, ordering a different method of service under Rule 4(f)(3) "would constitute a substantial affront to Austrian law" and thus "the district court did not abuse its discretion in denying [plaintiff's] motion to authorize alternative means of service." *Id.* at 927-28. Similarly here, given that Brazil prescribes a specific method of serving Brazilian defendants in actions initiated in foreign courts, ordering a different method of service under Rule 4(f)(3) "would constitute a substantial affront" to Brazilian law.

This does not, of course, leave J.B. without a way to serve Defendants: all they have to do is get letters rogatory. J.B. complains throughout its briefing that this is a long, difficult, and uncertain process, citing to a U.S. State Department website that "[s]ervice of process in Brazil pursuant to the Inter-American Convention on Letters Rogatory and Additional Protocol is problematic. Requests can take more than 3 years to complete." [DE 46 at 2.] First, the State Department's website to which J.B. cites was recently amended to delete this reference to the difficulty of obtaining service via letters rogatory in Brazil. *See* Brazil Judicial Assistance, http://travel.state.gov/law/judicial/judicial_672.html (last accessed June 6, 2011). But even if I were to presume that it remains difficult to obtain service in Brazil via letters rogatory, for the reasons just stated I will not override the laws a sovereign state like Brazil just because they are perceived to be slow or difficult. Any questions about the ways in which Brazil processes letters rogatory or complies with the Inter-American Convention are ultimately diplomatic issues for the executive branch. For me to impose by fiat a rule allowing service on Brazilians in a manner that Brazil has apparently resisted for decades would be to side-step the State department

and its role in negotiating with the sovereign state of Brazil.[5]

Thus, J.B. must get its letters rogatory to pursue the action against Amadeo Rossi and Forjas Taurus in this Court. If it doesn't like that process, or thinks it will only ever be a fruitless endeavor, J.B. should remember that there is nothing preventing it from hiring Brazilian counsel and suing Amadeo Rossi and Forjas Taurus in Brazil. It should also be remembered to that J.B. could also have avoided this entire issue of what would constitute sufficient service by simply insisting on a clause in its contract with Amadeo Rossi as to what would happen in the event of litigation. *See Nat'l Equip. Rental Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964) ("[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party, or even to waive notice altogether."); 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1062 (3d ed.) ("[I]t should be remembered that a person or an entity can consent to receive service of process in a manner that deviates from Rule 4 or can waive notice and service altogether.").

## CONCLUSION

Accordingly, J.B.'s attempt to serve Amadeo Rossi and Forjas Taurus via certified mail does not constitute effective service of its Complaint under Federal Rule of Civil Procedure 4. In order to properly serve Amadeo Rossi and Forjas Taurus, J.B. must seek letters rogatory.

The Motions to Dismiss by Amadeo Rossi and Forjas Taurus [DE 15, 19, 62, 65, 75 and 77] will be denied, however, because "[d]ismissal is not appropriate when there is a reasonable

---

[5]In this respect, I respectfully disagree with the decisions from two other district courts to allow for service of a Brazilian defendant by alternative means. *Liberty Media Holdings, LLC v. Vinigay.com*, 2011 WL 810250, at *2-5 (D. Ariz. Mar. 3, 2011) (allowing service by email); *Lyman Morse Boatbuilding Co., Inc. v. Lee*, 2011 WL 52509, at *2-3 (D. Me. Jan. 6, 2011) (allowing service on Defendant's counsel).

prospect that service may yet be obtained." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1240 (Fed. Cir. 2010). *See also* Charles A. Wright & Arthur R. Miller, 5B *Federal Practice & Procedure* § 1354 (3d ed.) ("[S]ervice generally will be quashed and the action preserved in those situations in which there is a reasonable prospect that the plaintiff ultimately will be able to serve the defendant properly.").

Therefore, the Motions to Dismiss by Amadeo Rossi and Forjas Taurus [DE 15, 19, 62, 65, 75 and 77] are **DENIED**. J.B. Custom's Motion to Strike [DE 60] is also **DENIED**. J.B. Custom's attempted service of its Complaint on Amadeo Rossi and Forjas Taurus by certified mail is **QUASHED**. J.B. Custom is afforded 90 days to effectuate proper service of its Second Amended Complaint on Amadeo Rossi and Forjas Taurus via letters rogatory. Additional time for service will be granted should J.B. Custom demonstrate it is necessary.

**SO ORDERED**.

ENTERED: June 6, 2011

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT